# Haggard v. Lexington Utilities Co. et al.

(Decided June 21, 1935.)

S. S. WILLIS for appellant.

STOLL, MUIR, TOWNSEND & PARK, DUNCAN & DUNCAN and W. L. WALLACE for appellees.

OPINION OF THE COURT BY JUDGE REES—Affirming.

The Lexington Utilities Company was incorporated in 1909 with an authorized captital stock of $100,000. Its charter was amended from time to time, and on May 29, 1928, the authorized capital stock was fixed at $5,250,000, divided into 50,000 shares of preferred stock of the par value of $100 each, and 250,000 shares of common stock of the par value of $1 each. Only 25,426 shares of the preferred stock and 102,575 shares of the common stock have been issued.

By section 1 of article 5 of the charter as amended on May 29, 1928, the holders of the preferred stock were entitled to receive out of the surplus or net profits of the corporation dividends at the rate of 6½ per cent. per annum payable quarterly before any dividends could be paid upon the common stock. Section 2 of article 5 read:

"In no event shall any dividend whatever be paid or declared or any distribution made on the Common Stock or on any other stock, hereafter created, of the company other than preferred stock, nor shall any stock of the company other than preferred stock, be purchased, redeemed or otherwise acquired by the company, unless and until full cumulative dividends on the preferred stock for all past quarterly dividend periods shall have been paid, full cumulative dividends as aforesaid on the preferred stock for the then or current quarterly dividend period shall have been paid, or a sum sufficient for the payment thereof set apart for such payment, and the surplus of the company available for the declaration and payment of dividends on the preferred stock, shall, after paying or making provision for the payment of dividends on the preferred stock as above provided, at least equal $13.00 for each share of the preferred stock then outstanding. No dividends shall be paid or declared or any distribution made on the common stock or any other stock, other than preferred stock of the company, and no stock of the company, other than preferred stock, shall be purchased, redeemed or otherwise

acquired by the company if the effect thereof would be to reduce such surplus of the company below an amount equal to $13.00 per share for each share of the preferred stock then outstanding.''

Section 4 made the preferred stock subject to redemption at $107.50 a share in addition to all accrued dividends, and section 8 provided that the articles of incorporation should not be further amended ''so as to affect any of the priorities of the preferred stock or so as to authorize any other class of stock having equal or greater preferences or priorities, either in respect of the payment of dividends or in liquidation or distribution of assets to or over the preferred stock.''

In January, 1934, the capital stock of the Lexington Utilities Company became impaired by reason of losses sustained on an investment in the stock of and loans made to the Kentucky Traction & Terminal Company so that it was unable, because of section 548 of the Kentucky Statutes, to declare or to pay dividends on the preferred stock until the capital to the extent of the impairment was restored, or the capital stock reduced, although its earnings were sufficient for that purpose. The losses amounted to more than $3,000,000, and the capital stock of the company was impaired to the extent of approximately $1,700,000. To meet this situation it was proposed to reduce the authorized capital stock from $5,250,000 to $738,225, consisting of 25,426 shares of preferred stock having a par value of $25 each, and 102,575 shares of common stock of $1 par value each. An amendment to article 5 of the articles of incorporation was submitted to the stockholders in April, 1934, which provided for such a reduction in the capital stock. It also provided for dividends upon the preferred stock at the rate of $6.50 per share per annum, and, further, that no dividend could be paid on the common stock until all dividends on the preferred stock had been paid and current dividends provided for and a surplus available for preferred dividends should be accumulated equal to $88 per share of preferred stock. The amendment was consented to in writing by the holders of 18,289 shares of the outstanding preferred stock. None of the holders of the common stock consented to the amendment.

The officers and directors of the corporation, being in doubt as to whether or not a sufficient number of

stockholders had consented to the amendment, did not file the certificate of amendment in the office of the county clerk or in the office of the secretary of state. The stockholders' meeting at which the matter was to be considered was adjourned to July 19, 1934, and was then adjourned to December 6, 1934. On November 1, 1934, a notice of a special meeting of stockholders to be held on December 6, 1934, was sent to all of the stockholders. They were notified that a special meeting of the stockholders would be held on December 6, 1934, for the purpose of amending article 5 of the charter in certain respects, and a copy of the proposed amendment was inclosed with the notice. This amendment differed from the amendment proposed in April in that it provided that dividends in the discretion of the directors might be paid to the holders of the common stock if the surplus should equal at least $13 for each share of the preferred stock then outstanding, provided, however, that in no event should dividends on the common stock be paid in an aggregate amount in excess of 50 per cent. of the net earnings of the company accruing subsequent to the first day of the calendar month nearest to the effective date of the amendment unless and until the surplus of the company should equal at least $88 for each share of preferred stock then outstanding. In other words, under the proposed December amendment, 50 per cent. of the net earnings after the payment of dividends on the preferred stock must be added to the surplus until it equals $88 for each share of preferred stock. Under the proposed April amendment, no dividends on the common stock could be paid until the surplus should be equal to at least $88 for each share of preferred stock. The amendment proposed at the December meeting of stockholders was consented to in writing by the holders of 16,636 shares of the preferred stock of the par value of $1,636,600, and also by the holders of the 102,575 shares of common stock of the par value of $102,575. Less than two-thirds of the preferred stock was voted for the amendment, but the owners of more than two-thirds of the total number of shares and of more than two-thirds of the total capital stock consented thereto.

E. W. Haggard, a preferred stockholder, brought this suit under the Declaratory Judgment Act to have determined the validity of the two amendments above

referred to, and whether or not under the Statutes of Kentucky an amendment to the charter of a corporation must have the consent in writing of or the vote of two-thirds of each class of the capital stock or only of the total outstanding stock, or whether the provision of the Statutes which requires the vote of or written consent of stockholders representing two-thirds of the capital stock means two-thirds of the money actually paid in or two-thirds of the shares of stock. He also asked for a declaration of rights on the question as to whether the earnings of the corporation after February 1, 1934, the date when the impairment of its stock was determined, up to the date of the lawful adoption of an amendment reducing the capital stock, may be used to pay dividends on the preferred stock, or whether such earnings must be held as capital surplus during that period.

The circuit court held: (1) That the April amendment was legally and properly adopted; (2) that the December amendment was a valid amendment, and that it amended and superseded the April amendment of article 5 of the articles of incorporation of the Lexington Utilities Company; (3) that the words "stockholders representing two-thirds of its capital stock," as used in section 553 of the Statutes, means two-thirds of the capital stock paid in; and (4) that the earnings of the corporation accumulated after February 1, 1934, up to the date of the adoption of the December amendment could be used by the board of directors of the Lexington Utilities Company, in its discretion, for the purpose of paying dividends.

E. W. Haggard appeals from so much of the judgment as holds the December amendment valid, and J. M. Sellers, trustee of the Kentucky Securities Corporation, which owns practically all of the common stock of the Lexington Utilities Company, has been granted a cross-appeal. It is his contention that the April amendment was not legally adopted, and that under section 553 of the Kentucky Statutes the consent in writing or the vote of owners of two-thirds of the total number of outstanding shares of stock of a corporation is necessary to amend such corporation's articles of incorporation so as to increase or decrease its capital stock.

In respect to the claim that section 553 of the Statutes requires the consent in writing or the vote of the owners of two-thirds of the total number of shares

of each class of capital stock outstanding there is little difficulty. Both the April and December amendments were consented to in writing by the owners of more than two-thirds of the total capital stock measured by the amount of money paid in for the stock, but the December amendment was not consented to in writing by the owners of two-thirds of the preferred stock. Section 553 provides that any corporation may increase or decrease its capital stock by a vote of or by the written consent of "stockholders representing two-thirds of its capital stock." The capital stock of a corporation is the amount paid in by its stockholders in money, property, or services with which it is to conduct its business, and it is immaterial how the stock is classified. The money paid in for all classes of stock is used for the same purposes. The term "capital stock," as used in section 553 of the Statutes, designates the amount of capital contributed by the stockholders for the use of the corporation. For convenience it is divided into shares, but whether the stock is designated preferred or common, the certificate shows the interest the holder has in the corporation and the amount that has been contributed by him. In Rider v. John G. Delker & Sons Co., 145 Ky. 634, 140 S. W. 1011, 1012, 39 L. R. A. (N. S.) 1007, it was said:

> "The capital of a corporation is the sum total of its stock, whether common or preferred. Certificates of stock are mere evidences that the holders thereof have invested the sums called for in the certificates in the enterprise."

See, also, Fletcher on Corporations, vol. 11, sec. 5079. The statute nowhere says that the consent of two-thirds of each class of capital stock is necessary to adopt an amendment to the articles of incorporation increasing or decreasing the capital stock. The December amendment was adopted by the vote of stock representing more than two-thirds of the money paid in by the stockholders, and this conformed to the requirements of section 553 of the Statutes. Appellant, Haggard, insists, however, that the December amendment is invalid because it impairs the rights of the preferred stockholders in that the board of directors in its discretion is permitted to pay to the common stockholders dividends out of 50 per cent. of the earnings if a surplus equal to at least $13 a share on the preferred stock is created. It is

his contention that before any dividends can be paid upon the common stock, the company must accumulate a reserve of $113 per share for the redemption of preferred stock and the payment of dividends thereon. The only provision in the charter, prior to the 1934 amendments, requiring the accumulation of a surplus before dividends on the common stock could be declared and paid was the one for $13 per share for each share of the preferred stock then outstanding. The purpose of this provision apparently was to bridge over short periods of reduced earnings that might occur, and to prevent the suspension of dividends on the preferred stock. The amendment adopted in December, 1934, provided the same protection and entitled the holders of preferred stock to the same preferences they theretofore had. They are now entitled to an annual dividend of $6.50 on each share of stock, which is equal to the former dividend at the rate of 6½ per cent. on stock of the par value of $100. Prior to the 1934 amendments, article 5 of the articles of incorporation provided that no dividend should be paid or declared or any distribution made on the common stock if the effect thereof would be to reduce the surplus of the company below an amount equal to $13 on each share of preferred stock then outstanding. The December amendment affords the same protection.

It may be, as contended by appellant, that there are amendments so fundamental and radical in their effect on the stockholders that they can be adopted only by unanimous consent, but we do not think the December amendment is of that character. Without such a reduction of the capital stock as would eliminate the impairment of the capital of the company no dividends could have been paid for many years, although the current earnings of the company were sufficient for that purpose. The amendment was intended to and does benefit the preferred stockholders. It leaves their income unimpaired, and provides for the accumulation of a surplus that eventually will restore the book value of their holdings. Section 559 of the Kentucky Statutes gives a corporation the right to change or amend any of the articles of its incorporation by the consent in writing of the owners of at least two-thirds of the capital stock, and by section 553 it may reduce its capital stock at any time by the vote of, or by the written consent of,

stockholders representing two-thirds of its capital stock. These statutory provisions become a part of the charter of every corporation organized under the laws of Kentucky, and are consented to by the stockholders when they purchase the stock, and consequently an exercise of this power by the corporation in accordance with the provisions of the statute does not impair the obligation of a contract. The provision of the statute must be read into the contract between the stockholder and the corporation. Kentucky Traction & Terminal Co. v. Murray, 176 Ky. 593, 195 S. W. 1119; International Bridge Co. v. New York, 254 U. S. 126, 41 S. Ct. 56, 65 L. Ed. 176; C. H. Venner Co. v. U. S. Steel Corporation (C. C.) 116 F. 1012; In re Interborough Consolidated Corporation (D. C.) 277 F. 455; Peters v. U. S. Mortgage Co., 13 Del. Ch. 11, 114 A. 598; Morris v. American Public Utilities Co., 14 Del. Ch. 136, 122 A. 696. We conclude that the December amendment is valid.

The earnings of the Lexington Utilities Company which accrued after February 1, 1934, when the impairment of its capital was determined, and prior to the adoption of the December amendment, amounted to more than $200,000. While the impairment of the capital existed, these earnings could not be paid out as dividends because of the inhibitions contained in section 548 of the Kentucky Statutes, but when the capital stock was reduced, they became a part of the earned surplus of the corporation. Section 548 does not prohibit the payment of dividends out of surplus or any other fund when such payment will not render the corporation insolvent or diminish the amount of its capital stock. These earnings are free assets of the corporation which can be distributed without violating section 548 of the Statutes or any other law. 14 C. J. page 806, 1224; Equitable Life Assurance Society v. Union Pacific Railway Co., 212 N. Y. 360, 106 N. E. 92, L. R. A. 1915D, 1052; People of Colorado v. Great Western Sugar Co. (C. C. A.) 29 F. (2d) 810.

In view of our conclusion that the earnings which accrued subsequent to February 1, 1934, are available for the payment of preferred dividends and for building up the surplus as required by the charter, it is unnecessary to determine the validity of the amendment proposed at the April meeting of the stockholders, since

the December amendment to article 5 of the articles of incorporation is valid and superseded the amendment proposed in April even if the latter was properly adopted.

The judgment is affirmed on both the original and the cross appeal.