## Francke et al. v. Axton-Fisher Tobacco Co.

March 3, 1942.

Woodward, Dawson & Hobson for appellee.

Opinion of the Court by Judge Ratliff—Affirming.

The appellants, who are the owners of certain stock of appellee, a corporation, hereinafter called the company, brought this action under the provisions of the Declaratory Judgment Act,. Civil Code of Practice, Section 639a—1 et seq., seeking a declaration of the rights of the parties with respect to the right of the company to carry into effect a proposed plan of recapitalization of the company by amending the Articles of Incorporation so as to authorize the issuance of a specified number of shares of new prior preferred stock with priority over the present outstanding preferred stock, Class A common stock and Class B common stock as to dividends, etc. One of the appellants is the owner of 52 shares of the preferred stock of the company; another one is the owner of 50 shares of Class A common stock; and the other one is the owner of 852 shares of Class B common stock, thus representing all classes of present outstanding shares of stock of the company. The facts set out in the petition and admitted in the answer are substantially these:

The authorized capital stock of the defendant company consists of 20,000 shares of preferred stock of the

par value of $100 per share of which 14,136 shares are presently outstanding; 50,000 shares of Class A common stock of the par value of $10 per share of which 45,465 shares are presently outstanding; and 200,000 shares of Class B common stock of the par value of $10 per share, of which 112,012 shares are presently outstanding. The preferred stock carries an annual six per cent cumulative dividend rate payable quarterly and no dividend can be paid on or set apart to Class A common stock or Class B common stock until all accrued and unpaid dividends on the preferred stock have been fully paid or set apart for payment. The Class A common stock carries an annual cumulative dividend rate of $3.20 per share payable quarterly, and which must be paid on or set apart to said stock before any dividend can be paid on or set apart to the Class B common stock. After there had been paid on or set apart to Class B common stock in any one year a cash dividend of $1.60 per share or a stock dividend at the rate of seven per cent then the Class A common stock is entitled to participate equally as a class with the Class B common stock as a class in all additional dividends declared or paid in that year.

The Class B common stock has full voting power, but the preferred stock and Class A common stock have voting power only in event the company is in arrears in the payment of as many as four quarterly dividends, in which event the class of stock in respect of which such arrearage exists has equal voting power, share for share, with the Class B common stock, which voting power continues until all of said defaulted dividends have been paid. The whole or any portion of the preferred stock is subject to redemption on any quarterly dividend payment date at the price of $105 per share together with all unpaid and accrued dividends thereon; and the whole or any part of the Class A common stock is subject to redemption on any quarterly dividend payment date at the price of $60 per share together with all unpaid and accrued dividends thereon. In event of dissolution, liquidation, merger or consolidation of the company, or the sale of substantially all of its assets, there must be paid in respect of the outstanding preferred stock the sum of $105 per share together with all unpaid and accrued dividends thereon before any sum can be paid to or any assets distributed among the holders of the Class A common stock and Class B common stock, and after such

payment in respect of the preferred stock and after the payment of all accrued and unpaid dividends on Class A common stock, the remaining assets and funds of the company must be distributed among and paid to the holders of the Class A common stock and the holders of the Class B common stock in the ratio of two to one; that is to say, there must be paid in respect of each share of Class A common stock twice the amount paid in respect of each share of Class B common stock.

Paragraph (n) of Article IV of the Articles of Incorporation of the company, which authorized the issue of the preferred, Class A common and Class B common stock hereinabove mentioned, and under which such stock was issued, in part reads:

"So long as any of said preferred stock and/or said Class A common stock shall remain outstanding no other stock shall be created, ranking as to dividends or as to assets on a parity with or in priority over said preferred stock and/or said Class A common stock without the affirmative vote or written consent of the holders of at least two thirds (2/3) of the said preferred stock and/or said Class A common stock at that time outstanding voting or consenting by classes."

As of January 1, 1942, the company was in default in the payment of more than four quarterly dividends on its preferred stock, such defaulted dividends aggregating $17.25 per share, and was likewise in default in the payment of more than four quarterly dividends on the Class A common stock, such defaulted dividends aggregating $16 per share. The Board of Directors of the company have formulated a plan for the recapitalization of the company, which plan in its essential features is as follows:

(a) Amendment of the Articles of Incorporation so as to authorize the issue of 149,954 shares of new 5% cumulative prior preferred stock of the par value of $25 per share, dividends payable quarterly, with priority over the present outstanding preferred, Class A common and Class B common stock of the company as to dividends, whether future or accumulated, and as to assets of the company upon dissolution, liquidation, merger or consolidation of the company or in event of the sale of substantially all of the company's assets, to the extent

of the par value of said stock and accumulated dividends thereon; such new prior preferred stock being subject to redemption on any quarterly dividend date at $26.25 per share plus all accumulated dividends thereon; and said prior preferred stock to have no voting power except when the company is in default in the payment of as many as four quarterly dividends, in which event such stock shall have the same voting power, share for share, as Class B common stock of the company until such default has been made good. 56,544 shares of said new prior preferred stock are to be issued only in exchange for present outstanding preferred stock; and 54,558 shares thereof to be issued only in exchange for present outstanding Class A common stock.

(b) Offer in exchange for each share of present outstanding preferred stock four shares of the new prior preferred stock plus the sum of $17.25 in cash; all present outstanding preferred stock received in such exchange to be immediately cancelled and not reissued.

(c) Offer in exchange for each share of present outstanding Class A common stock one and one-fifth shares of the new prior preferred stock plus the sum of $16 in cash; all present outstanding Class A common stock received in such exchange to be immediately cancelled and not reissued.

(d) The sale for cash at par and accumulated dividends of not exceeding 38,852 shares of the new prior preferred stock for the purpose of procuring the money with which to meet the cash payments contemplated to be made in the exchange of the new prior preferred stock for the old preferred stock and Class A common stock.

(e) Amendment of the Articles of Incorporation of the company reducing the number of authorized shares of the preferred stock and Class A common stock to the number of shares outstanding after the completion of the exchange program.

Inasmuch as the proposed plan of recapitalization contemplated amending the Articles of Incorporation of the company, same cannot be put into effect except by the written consent or affirmative vote of the holders of two-thirds of all outstanding preferred, Class A common and Class B common stock of the company in the aggregate, and in view of the provisions of Article IV of the

Articles of Incorporation hereinabove set out, such two-thirds consent or affirmative vote must include the written consent or affirmative vote of the holders of at least two-thirds of the preferred stock and Class A common stock voting or consenting as classes. It is the purpose of the Board of Directors and of the management of the company to submit the proposed plan of recapitalization to the stockholders at a special meeting to be called for that purpose; and under the rules and regulations of the Securities and Exchange Commission of the United States, to solicit proxies for use at such meeting as well as consents to make the exchanges contemplated by the plan. If the necessary approval is received at such meeting it is likewise the purpose of the company to proceed to the consummation of the plan which it and its management insist is in all respects valid.

The appellants then alleged that the proposed plan of disposition of the various classes of present outstanding stock and the prices proposed to be paid therefor in exchange for the new stock proposed to be issued under the plan, was invalid as being in violation of Section 193 of the Constitution of Kentucky which provides that no corporation may issue stock except for an equivalent in money paid, labor done, or property actually received and applied to the purposes for which the corporation was created; and further, that the plan would be violative of Section 564-1, Kentucky Statutes, which provides that no preferred stock of a Kentucky corporation can be issued except for cash or its equivalent, nor for less than the par value of the shares; and that the plan would be violative of the vested rights of the non-exchanging holders of present outstanding preferred and Class A common stock in respect of accumulated and unpaid dividends thereon.

The answer of the company admits all the facts set out above, which are substantially in the language of the petition, except if denied that the proposed plan of recapitalization or any part thereof was violative of Section 193 of the Constitution or Section 564-1 of the Kentucky Statutes. The answer further set out the balance sheet of the company as of December 31, 1941, a copy of which was filed as an exhibit showing the current assets, and alleged that that figure is less than the present sound value of the current assets. It also set out the indebtedness of the company including Federal and State

income and capital stock taxes and other taxes accrued and unpaid; the number of outstanding shares of each class of stock and the value thereof, and the net worth of the company. Without extending this opinion by a further detailed resume of the answer, it is sufficient to say that in answer to the various attacks made upon the legality of the proposed plan of recapitalization, the answer sets out facts which show that the plan is not offensive to Section 193 of the Constitution or Section 564-1 of the Kentucky Statutes.

Appellants demurred generally to the answer, thereby admitting the facts set out therein, which demurrer the court overruled and appellants failing to plead further, the chancellor entered judgment adjudging the proposed plan to be valid in all respects. For a final determination of the question the appellants have prosecuted this appeal.

In reference to the contention of appellants that the proposed plan was invalid with respect to the outstanding preferred stock and outstanding Class A common stock as being violative of Section 193 of the Constitution or Section 564-1 of the Kentucky Statutes, we think the cases of Taylor et al. v. Citizens' Oil Company et al., 182 Ky. 350, 206 S. W. 644; Lamprecht v. Swiss Oil Company, 6 Cir., 32 F. (2d) 646; and Dumesnil et al. v. Reeves, Com'r of Rev., et al., 283 Ky. 563, 142 S. W. (2d) 132, sufficiently answer that contention in favor of appellee company. Those cases deal with questions similar to the ones here involved, and from the trend of those authorities it appears that the proposed plan of recapitalization involved in the present case is not violative of the Constitution or the Statutes, supra. On the question of whether the proposed plan will violate the vested rights of the holders of preferred and Class A common stock now outstanding, we find that the case of Haggard v. Lexington Utilities Co. et al., 260 Ky. 261, 84 S. W. (2d) 84, 88, is in point. The court said:

"Section 559 of the Kentucky Statutes gives a corporation the right to change or amend any of the articles of its incorporation by the consent in writing of the owners of at least two-thirds of the capital stock, and by Section 553 it may reduce its capital stock at any time by the vote of, or by the written consent of, stockholders representing two-thirds of its capital stock. These statutory provisions become

a part of the charter of every corporation organized under the laws of Kentucky, and are consented to by the stockholders when they purchase the stock, and consequently an exercise of this power by the corporation in accordance with the provisions of the statute does not impair the obligation of a contract. The provision of the statute must be read into the contract between the stockholder and the corporation.'' (citing.)

One contention of appellants is that Article 4 of the corporation does not authorize the issuance of the new prior preferred stock. We do not construe that part of the Articles of Incorporation as purporting to prohibit any amendments to the Articles of Incorporation so as to authorize the issuance of any new stock further than to require the written consent or affirmative vote of at least two-thirds of the holders of the stock affected. The plan here involved specifically requires the written consent or affirmative vote of two-thirds of the classes of stock involved but does not purport to be compulsory or coercive but leaves it to the will and pleasure of the stockholders. We think the Haggard case, supra, answers this question in its reference to Section 559 of the Kentucky Statutes, quoted above.

Appellants rely upon the case of Consolidated Film Industries v. Johnson, Del. Sup., 197 A. 489, and Keller v. Wilson & Co., Del. Sup., 190 A. 115. Upon examination of those cases we do not think they support appellants' contention. The distinction in the facts involved in those cases and the ones involved in the present case are pointed out in the case of Johnson v. Fuller, 3 Cir., 121 F. (2d) 618, which points out the distinction between recapitalization plans which eliminates dividends and those which merely provided for the payment of dividends of a new stock before the payment of accumulated dividends on the old stock.

Upon examination of the undenied facts set out in the pleadings of the respective parties, and authorities applicable to those facts, we conclude that the plan of recapitalization of defendant company is not violative of either Section 193 of the Constitution or Section 564-1 of the Kentucky Statutes, nor any other constitutional or statutory laws of this State. The chancellor's views being in harmony with our views, it follows that the judgment must be and is affirmed.