ADOLPH PORGES, suing on his own behalf as a Preferred Stockholder of Vadsco Sales Corporation, and on behalf of all other Preferred Stockholders similarly situated,

*vs.*

VADSCO SALES CORPORATION.

*Kent, May 17, 1943.*

*Max Terry* and *Abraham Marcus,* of New York City, for complainant.

*Daniel O. Hastings* and *Caleb R. Layton, 3rd,* of the firm of Hastings, Stockly and Layton, and *Joseph P. Antonow,* of Chicago, Ill., for defendant.

PEARSON, Vice-Chancellor: The proposed merger of defendant and its wholly owned subsidiary is designed to bring about a recapitalization of defendant. The questions here concern the relative changes in the rights of the holders of defendant's two classes of stock; preferred and common. Complainant charges that the changes are so unfair and inequitable to the preferred stockholders that the consummation of the merger should be enjoined.

Defendant has outstanding (or issuable for capital stock of predecessor companies) 21,160 shares of preferred stock, and 1,015,913 shares of common stock. The preferred stockholders are entitled to preferences of cumulative dividends of 7% per annum, and distributions in liquidation in the amount of $100 a share, together with accumulated dividends. The stock is redeemable, at the option of the corporation, at $110 a share, plus accumulated dividends. The common stock has no par value and confers participation rights subordinate to the preferred stock. Each share of each class entitles the holder to one vote on all corporate matters.

From 1931 to 1939, defendant operated at a loss. For the years 1940 to 1942, its earnings resulted in net profits. No dividends have been paid on either class of stock since 1930. At the end of 1942, the deficit from operations amounted to $2,440,068.34; and the unpaid accumulated dividends on the preferred stock aggregated $1,839,156.67.

During 1942, defendant's officers, with the approval and authorization of the directors, conferred with holders of large blocks of stock of each class, respectively with the view of devising a plan of recapitalization. The plan determined upon was the proposed merger, here under attack. By the merger agreement, each share of defendant's preferred stock would be converted into one share of preferred and five shares of common stock of the surviving corporation; and each share of defendant's common stock would be converted into one-tenth of a share of common stock of the surviving corporation. The new preferred stock would have preferences of cumulative dividends of $2.50 per share per annum, a liquidation value of $50, and redemption value of $52.50, together with accumulated dividends. Each share of the new common and new preferred stock would confer the right to one vote, except that if at any time there should be accumulated unpaid dividends on the preferred stock in the amount of $6.25 per share, the preferred stockholders, as a

class, would become entitled to elect a majority of the directors. The new preferred stock would be convertible, prior to 1953, into new common stock, on the basis of one share of preferred for five shares of common. The new preferred and new common stockholders would have certain pre-emptive rights. The agreement also provides for a sinking fund for the redemption or purchase of the new preferred stock.

The agreement was approved by the directors of defendant and of the merging subsidiary. Among the stated conditions precedent to the effectiveness of the agreement are provisions that it be approved by the holders of two-thirds of defendant's capital stock of both classes, and as well by the holders of a majority of defendant's preferred stock. A meeting of defendant's stockholders was called for April 14, 1943 to consider and act upon the agreement. The notice of the meeting included a copy of the agreement, description of the proposed changes in capitalization, and consolidated financial statements of defendant and its subsidiary companies as of December 31, 1942. The pertinent facts seem adequately disclosed, and indeed, complainant relies upon the financial statements to support his argument concerning book values of assets, capital stock, and net worth.

The stockholders' meeting was adjourned to May 12. Prior to the adjournment, the vote of the shareholders present in person or by proxy was canvassed, with this result: 11,894 shares of preferred stock were voted in favor of the merger, and 413 shares against it; 494,335 shares of common stock were voted in favor, and 40,242 shares against it.

Complainant, as the owner of two shares of preferred stock, filed this bill to enjoin the merger. He points out that it appears from the balance sheet of December 31, 1942 that the net worth of the corporation was $2,219,140.52; and that the sum of the par or fixed liquidation value of the preferred stock, $2,116,000, plus accumulated dividends, $1,839,156.67, amounted to $3,955,156.67. In other words, that the total of these preferences of the preferred stock exceeded the net

worth of the company, at the date of the balance sheet, by the amount of $1,736,016.15. From this complainant concludes that the common stock has no book value whatever, but that it is "under water to the extent of $1,736,016.15".

Taking the net worth of defendant as disclosed by the balance sheet, and the fixed liquidation value of the new preferred stock of $50 per share, and assuming that none of the new preferred stock would be converted into new common stock, complainant makes the following computation of the result of the recapitalization contemplated under the merger agreement:

Book value of stock issued to old  
    Preferred Stockholders—  

| | |
|---|---|
| New Preferred | $1,058,000 |
| New Common | 592,355 |
| Total to old Preferred | $1,650,355 |

Book value of stock issued to old  
    Common Stockholders—  

| | |
|---|---|
| New Common | $ 568,786 |

On the same basis, but assuming that all of the new preferred stock would be converted into new common stock, complainant makes the further computation:

| | |
|---|---|
| Book value of stock issued for old Preferred | $1,500,138.64 |
| Book value of stock issued for old Common | 719,001.36 |

The essence of the complaint is contained in the following quotation from the bill:

"The said plan of recapitalization to be accomplished by the said merger is unfair and inequitable and the treatment afforded to the present Preferred Stockholders of the defendant and the benefits afforded to the present Common Stockholders of the defendant are such as to amount to a fraud upon the present Preferred Stockholders for

the reason that out of defendant's present total capital and surplus of $2,219,142, the present Common Stockholders will receive stock, if none of the new Preferred Stock is converted for Common, having an aggregate book value of $568,786 in place of their present stock which has no value whatsoever; or if all the new Preferred Stock is converted for new Common Stock, the present Common Stockholders of the defendant will receive stock of the new corporation having an aggregate book value of $719,001 for their present Common stock which has no value whatsoever."

Complainant properly concedes that by a merger of a corporation with its wholly owned subsidiary, preferred stockholders' rights to accumulated dividends may be compounded if the terms of the merger agreement are fair and equitable in the circumstances of the case. *Federal United Corporation v. Havender*, 24 *Del.Ch.* 318, 11 *A.2d* 331.

Under *Section* 61 of the *Delaware Corporation Law, Rev. Code of Del.* (1935) *Sec.* 2093, as amended, a stockholder objecting to a merger or consolidation may withdraw from the enterprise and obtain payment in money for the value of his stock, by following the procedure prescribed by the statute. "As a general proposition dissenting stockholders are thus put to an election by the statute." *Cole v. National Cash Credit Ass'n.*, 18 *Del.Ch.* 47, 56, 156 *A.* 183, 187. However, there are exceptional circumstances under which a stockholder is not obliged to make an election to accept the merger or to demand the value of his stock in money, but may enlist the aid of a court of equity to restrain the consummation of the merger. In the *Cole* case, the Chancellor gave examples of such circumstances, and said, "The exercise of the statutory right of merger is always subject to nullification for fraud."

The ground of objection to this merger is "constructive" fraud. No misrepresentation, concealment, or deception is charged. The facts fail to show that preferred stockholders having voting influence great enough to furnish the requisite approval would benefit from the alleged unfair allocation of stock of the surviving corporation. At the hearing,

complainant argued that the directors, or their families, as holders of common stock, would be benefited; but the extent of any possible benefit to them seems wholly unimportant in the light of the surrounding circumstances. The suggestion that one of the preferred stockholders who actively participated in the formulation of the plan might have been motivated by the fact that he will be paid $7,500 for services in this connection may be dismissed with the observation that the "loss", under complainant's theory, to that stockholder and the group he represents, would be many times greater than the sum mentioned.

Complainant's case is simply that the allocation between the old preferred and common stockholders is so unfair that it amounts to fraud. When fraud of this nature is charged, the unfairness must be of such character and must be so clearly demonstrated as to impel the conclusion that it emanates from acts of bad faith, or a reckless indifference to the rights of others interested, rather than from an honest error of judgment. *Cole v. National Cash Credit Ass'n., supra; MacFarlane, et al., v. North American Cement Corp., et al.,* 16 *Del.Ch.* 172, 157 A. 396, 398.

Complainant would find support for his position in the following quotation from the MacFarlane case:

"But a merger should not be permitted if its real and only purpose is to promote the interests of one class of stockholders to the detriment, or at the expense, of another class even though the latter may be in the decided minority."

He insists that the old common stock has no value whatever, and that under the merger, the common stockholders would be enriched at the expense of the preferred. The argument that the common stock is without value means no more than this: If the corporation were liquidated, and if the actual value of the property distributable to shareholders should not be greatly in excess of the amount appearing from the December 31, 1943 balance sheet as the net worth, then, in such assumed liquidation, the common stockholders

would receive nothing. But the corporation is not in liquidation, and complainant has shown no semblance of a right in the preferred stockholders to require that it be liquidated. The corporation is a going concern; and it is necessary to view the rights of the two classes of stock in the light of the probability that it will continue thus for an indefinite period. It may be noted in passing that the prices at which shares of both classes of stock have been sold on the New York Stock Exchange during 1941 and 1942 are quite different from the book value urged by complainant. In contrast with the book value in excess of $100 per share, preferred shares were sold at a low of 15 and a high of 34½. Instead of having no value whatever, shares of common stock were sold at a low of 5/16 and a high of ½.

To arrive at a judgment of the fairness of the merger, all of its terms must be considered. Complainant focuses his attention exclusively on the resultant changes in book value without taking into account other consequences of the merger with respect to the rights conferred by the two classes of stock. Complainant ignores the important fact that the old common stockholders have voting control, and that by the merger, control would pass to the holders of the old preferred stock. The latter are presently entitled to 21,160 votes, and the holders of the old common stock, 1,015,913 votes. After the merger, the old preferred stockholders would receive new preferred and new common stock entitling them to a total of 126,960 votes; whereas, the stock issuable to the old common stockholders would afford them but 101,591 votes. Again, the provisions for voting rights of the new preferred stock as a class, provisions for pre-emptive rights, for a sinking fund, and for conversion into common stock, are changes which may be of substantial value, depending upon future events.

Surely, this is not a situation where the real and only purpose of the merger is to promote the interests of one class of stock to the detriment, or at the expense of another. In

such a situation, the favored class would give up no benefits comparable to those it would receive; and the unfavored class would obtain no benefits comparable to those it would lose. At this stage of the proceeding, the evidence is, of course, not sufficient to permit a final determination that the benefits and detriments to the respective classes are comparable. However, that they might reasonably be so regarded by the stockholders does not seem incredible. The merger cannot become effective without the approval of defendant's directors, the holders of a two-thirds majority of all of its capital stock, and the holders of a majority of its preferred stock. The evaluation of the benefits and detriments of a plan of this character, by the persons whose rights and interests will be affected and who hold a majority of the stock, is properly entitled to great weight. Moreover, "There is a presumption that the judgment of the governing body of a corporation, whether at the time it consists of directors or majority stockholders, is formed in good faith and inspired by a *bona fides* of purpose." *Cole, et al., v. National Cash Credit Ass'n., supra.* The facts here fall far short of overcoming that presumption, and of demonstrating the unfairness of the plan. This conclusion does not seem to me inconsistent with the reasoning or result in the case of *Hottenstein v. York Ice Machinery Corporation,* (D.C.) 45 *F. Supp.* 436.

Complainant has not satisfied "the court that there is at least a reasonable probability of ultimate success upon a final hearing"; and, hence, the application for a preliminary injunction must be denied. *Consolidated Film Industries, Inc., v. Johnson,* 21 *Del.Ch.* 417, 428, 192 *A.* 603, 608; *Allied Chem. & Dye Corp. v. Steel & Tube Co.,* 14 *Del. Ch.* 117, 122, 122 *A.* 142, 158.

An order accordingly has been advised.