**DONOHUE et al. v. HEUSER et al.**

Court of Appeals of Kentucky.
May 1, 1951.

Henry J. Tilford, Lucian L. Johnson, Louisville, for appellants.

John E. Tarrant, Earl S. Wilson, Thomas S. Dawson, and Bullitt, Dawson & Tarrant, all of Louisville, for appellees.

MILLIKEN, Justice.

Appellants, minority preferred stockholders, seek in this action to enjoin the consolidation of the Louisville Railway Company (hereinafter referred to as "Railway") with the Capital Transit Company of Frankfort (hereinafter referred to as "Capital"). The Chancellor dismissed appellants' petition.

In August, 1949, all the directors of both Railway and Capital voted in favor of consolidation. Thereafter all of Capital's stockholders, all of the holders of Railway's common stock, and the holders of roughly 91 percent of Railway's preferred stock, consented to it. Appellants are the owners of the 9 percent of preferred stock voting against consolidation. The basis of their objection is that the plan of consolidation destroys valuable rights of the preferred stockholders and at their expense greatly favors the common stock. Their contentions are substantially as follows: I. The proposed terms for exchange of stock violate the Federal and State Constitutions because the contractual rights of the preferred stockholders are impaired; II. The proposed terms for exchange of

stock are not authorized by statute; III. The plan is unfair and inequitable; and IV. The plan is otherwise illegal.

The consolidation of corporations is specifically authorized by statute. KRS 271.470 through 271.490. The formal requirements of this statute have been complied with. We direct our attention to the plan proposed.

The name of the new company is to be the "Louisville Transit Co." As in all consolidations, it is necessary that stock in the new company be issued in place of the old stock of the constituent corporations. The proposed basis for exchange, insofar as it affects the preferred stock, is that in return for each share of Railway 5 percent $100 par preferred, the shareholder will receive: (1) $2.50 in cash, and (2) one share of Louisville Transit Co. $80 par 5 percent preferred stock, preferred over the common in dividends from earnings and in the distribution of capital assets upon dissolution, and callable at $80 per share plus accrued dividends.

Under the proposal the preferred shareholders will receive something different from what they had before. The preferred stock they now hold has a par value of $100, a preferential cumulative dividend of 5 percent, no preference on dissolution, and is non-callable. Since no dividends have been paid on this stock since 1930, cumulative dividends in the amount of $100 per share have accrued as against the dividend rights of the common shares.

At this point it is proper to consider the history of Railway's operations, its financial condition, and the objectives of the proposed plan of consolidation. Railway was incorporated in 1867. Its first preferred stock was authorized by amendment and issued in 1890. Preferred dividends were paid from 1892 to 1930, and for most of that period dividends were paid on the common stock. Due to many factors (some of which were common to similar transit companies), Railway has been unable to pay any dividends since 1930, even though its operations prospered from 1941 to 1947. By the end of 1949, its books showed a capital deficit of something over $5,000,000.

In 1948, after an abortive attempt to sell Railway's properties to the City of Louisville, its directors decided upon a program of expansion, and subsequently acquired interests in other transit companies in other Kentucky cities. The consolidation with Capital was deemed advisable for several practical reasons. It is obvious that such consolidation presented an admirable opportunity, if authorized, for Railway to adjust its capital structure and wipe out the $5,000,000 capital deficit.

It appears Railway has had substantial financial difficulties over the past twenty years. The future outlook is not bright. It, of course, could not pay dividends in the future until the $5,000,000 capital deficit was extinguished. KRS 271.265. Assuming that it would earn an allowed return of 7 percent on its estimated rate base of $4,000,000, it would take 17 years to liquidate this deficit from earnings. (On the basis of its 1950 earnings it would take 39 years.)

There was thus little prospect of the payment of any dividends for a great many years. For many reasons Railway's directors could reasonably conclude, as a matter of sound business judgment, that it was expedient to eliminate the capital deficit by changing the capital structure. The plan seemed a realistic approach to a serious corporate problem.

As we have seen, the proposed plan provides for the exchange of stock which will effectuate a substitution of rights. The preferred stockholders will lose their dividend arrearages, their return will be reduced, and their stock will be callable. In substitution for these rights, they will receive an immediate cash payment of $2.50 per share and will be given a preference upon dissolution in the assets of Railway. In addition, the statute gave them, at their election, the right to receive the fair cash value of their shares. KRS 271.490(1).

Fundamentally this substitution of rights presents the first two serious questions raised by appellants: I. If the consolidation statute authorized the cancellation of dividend arrearages and the other changes effected by the plan, would the obligations of the preferred shareholders' contract be

unconstitutionally impaired?; and II. If not, may we construe the consolidation statute, in providing for the conversion of stock, as authorizing the proposed extinguishment of rights in return for the new incidents of stock ownership? This requires us to consider briefly the statutory background and the nature of the rights held by the preferred stockholders.

I. The first preferred stock of Railway was issued in 1890. At that time there was in effect a statute enacted in 1856, Acts 1856, Ch. 48, p. 15, declaring that the charters of corporations should be subject to amendment at the will of the Legislature, provided that no amendment should impair other rights previously vested. Effective in 1893, Acts 1891-2, Ch. 171, the Kentucky Legislature enacted a general corporation law, and specifically repealed all charters theretofore granted or obtained insofar as inconsistent with the new law. This statute authorized consolidation. It also required corporations subject thereto to accept the provisions of the Kentucky Constitution.

In 1904, pursuant to the provisions of the 1893 general corporation law, Railway accepted the Kentucky Constitution, Section 3 of which provided that every grant of franchise, privilege or exception should be subject to revocation, alteration or amendment. In 1946 a new general corporation law was enacted, which included provisions for consolidation originally established in 1893 and maintained on our statute books since the latter date. From 1904 until 1946 Railway had amended its charter many times under the provisions of the 1893 general corporation law, and in 1948 it amended its charter to provide that it should have all powers conferred by the 1946 general corporation law.

 We think it evident that the foregoing constitutional and statutory provisions and the series of acts by Railway in accordance therewith effectively made the power to consolidate a part of Railway's charter, and the rights of the preferred stockholders were subject to this corporate prerogative. See Central University v. Walters' Ex'rs, 122 Ky. 65, 90 S.W. 1066.

This additional power of the corporation, though it may have affected the original rights of the preferred stockholders, cannot be said to have impaired ipso facto their contract with the corporation. This is especially true when we consider the fact that all of appellants purchased their stock after 1917. See Senn v. Levy, 111 Ky. 318, 63 S.W. 776; Haggard v. Lexington Utilities Co., 260 Ky. 261, 84 S.W.2d 84; Francke v. Axton-Fisher Tobacco Co., 289 Ky. 687, 160 S.W.2d 23; and Colgate v. U. S. Leather Co., 73 N.J.Eq. 72, 67 A. 657. As stated in the Haggard case, 260 Ky. 261, at page 268, 84 S.W.2d 84, at page 88: "These statutory provisions become a part of the charter of every corporation organized under the laws of Kentucky, and *are consented to by the stockholders when they purchase the stock,* and consequently an exercise of this power by the corporation in accordance with the provisions of the statute *does not impair the obligation of a contract.*" (Our italics.)

Having determined that the statute does not impair the obligation of appellants' contracts simply because it authorizes some sort of consolidation, the next phase of our question is whether or not, if the statute specifically authorized the terms of the proposed plan, it would violate the constitutional prohibitions found in Article 1, Section 10, of the Federal Constitution, and Section 19 of the Kentucky Constitution (which of course are limitations upon legislative power). The parties apparently agree, and we take the same view, that the most significant impairment of appellants' contract rights, if it is an impairment in the constitutional sense, is the extinguishment of dividend arrearages.

A significant case is McNulty v. W. & J. Sloane, 1945, 184 Misc. 835, 54 N.Y.S.2d 253. It involved the validity of a 1943 act of the New York Legislature, Laws 1943, c. 600, Stock Corporation Law, McKinney's Consol.Laws, c. 59, § 36, *which specifically authorized corporations by amendment* to reclassify their shares and *eliminate accrued but undeclared cumulative preferred dividends.* The New York Supreme Court held this act did not unconstitutionally impair the obligation of contract even when

applied to dividends which had accrued prior to the date the law was enacted.

After a careful review of prominent authorities, the Court declared that the right to receive accumulated but undeclared preferential dividends could not be adequately defined as a "vested right." It was stated, 54 N.Y.S.2d at page 260: "It is obvious that the right to accumulated dividends accrued by lapse of time but not declared, is not in the nature of a debt. There is no debt until the dividend has been declared. The only effect of a provision for accumulated dividends in a certificate of incorporation is to restrict the corporation from declaring dividends on other classes of stock until the cumulative dividends have been declared and paid. This is a preferential right and a valuable one. It does not, however, give rise to a chose in action which could be alienated or devised. It is not a property right in the sense that it exists separate and apart from the certificate."

Further the Court said, 54 N.Y.S.2d at page 260: "The contract between stockholders inter sese is not an unconditional contract. It is a contract subject to a condition that it may be changed or altered in the manner prescribed or authorized by the Legislature." The difficulty of the problem was pointed out, 54 N.Y.S.2d on page 261:

"* * * The courts have realized that the problem was a knotty one and that it involved important questions of public policy. On the one hand, there was the interest of the state, in the welfare of corporations organized under its sanction, in permitting them a certain flexibility in their capital structure to meet business and financial needs; on the other hand there was the concern to protect the rights of small investors, chargeable with an unrealistic, constructive knowledge of the 'reserved power' of the Legislature.

"There was the possibility of improper domination by large stockholders to be weighed against the power of a small stockholder to force the majority to buy his stock at exorbitant prices and to threaten to use his voting rights in such a way as to injure the business of the corporation and thus impair the rights of others. There was the necessity for allowing financial rejuvenation and at the same time there was the realization that there might result the possible enrichment of a junior class of stockholders at the expense of a senior class. In short, the problem was one of balancing intertwining and conflicting interests and of determining what was conducive to the good of society."

It is true there is a conflict in the authorities concerning the question decided in the preceding case, i. e., whether or not a statute may constitutionally authorize by direct charter amendment the extinguishment of accrued but undeclared preferential dividends. In addition to New York, the Courts of Illinois, Minnesota and New Jersey have upheld such action. See Western Foundry Co. v. Wicker, 1949, 403 Ill. 260, 85 N.E.2d 722; Sherman v. Pepin Pickling Co., 1950, 230 Minn. 87, 41 N.W.2d 571; and Franzblau v. Capital Securities Co., Inc., 1949, 2 N.J.Super. 517, 64 A.2d 644.

On the other hand, a Federal District Court applying the Michigan law, and the Courts of Delaware and Ohio, have taken a contrary view, although the Ohio Supreme Court only denied the right to eliminate dividend arrearages prior to the date of the statute authorizing such action. See Weckler v. Valley City Mill Co., D.C.1950, 93 F.Supp. 444; Keller v. Wilson & Co., 1936, 21 Del.Ch. 391, 190 A. 115; and Wheatley v. A. I. Root Co., 1946, 147 Ohio St. 127, 69 N.E.2d 187. See also same styled case in 79 Ohio App. 93, 72 N.E.2d 482.

The Courts have recognized a certain distinction between cases where the corporation proposes to eliminate the dividend right by direct charter amendment and those where it results from a plan of consolidation. See Federal United Corporation v. Havender, 1940, 24 Del.Ch. 318, 11 A.2d 331, 342; and Anderson v. International Minerals & Chemical Corporation, 295 N.Y. 343, 67 N.E.2d 573, 576. As stated in the latter case, the direct reclassification of shares present: "* * * problems very different from the problems of reorganization and merger which neces-

sarily involve exchange of shares in an old company, with all their rights, for new shares with new rights in a new company."

We think it evident that a consolidation necessarily effects a change in the rights of shareholders. As a matter of fact, a consolidation extinguishes every right a shareholder had in or against the constituent corporations because they themselves are effectively dissolved. Even if the rights of stockholders in the new corporation are in the same terms as in the old corporations, they are different rights. Yet probably no one would contend that an authorized change in stock interest from one corporation to another impairs the obligation of the shareholders' original contract.

To carry that thought further we must recognize that any significant change in corporate policy will almost invariably affect the rights of stockholders; that those rights are not immutable but are subject to alteration for the best interests of the corporation and all of its shareholders if the action taken is in accord with charter powers granted by statute; and that consolidation involves a matter of business management to which the contract rights of stockholders must to some extent be subordinated. See MacFarlane v. North American Cement Corporation, 1928, 16 Del.Ch. 172, 157 A. 396.

The problem, therefore, is not whether the preferred stockholders are to be given different rights under the new stock than those they had under the old, but whether the substitution of rights constitutes such an unjust and unauthorized change of the contract as to destroy one or more of its constitutionally protected incidents.

■ Appellants' right to be paid dividend arrearages is not a vested right in any fund. It is not a liquidated liability of the corporation. Its worth has already been substantially impaired by reason of the fact that the prospect of payment is quite remote. The claim to back dividends would be extinguished on dissolution of Railway, and the capital assets of the corporation are not impressed with a trust or subject to a lien for their payment. See Petty v. Hagan, 205 Ky. 264, 265 S.W. 787;

Taylor v. Axton-Fisher Tobacco Co., 295 Ky. 226, 173 S.W.2d 377, 148 A.L.R. 834; and Atlantic Coast Line R. Co. v. Commonwealth, 302 Ky. 36, 193 S.W.2d 749. Thus while the preferred shareholders have a potential right to past preferential cumulative dividends from future earnings, the financial condition of Railway is such that this right has little present or prospective value.

■ Another original right of the preferred stock is that it is non-callable. As with the dividend arrearages, and for the same reason, the non-callability feature of this stock is not of much value. The same may also be said concerning the right to an annual dividend of $5, because the payment of this dividend has become highly speculative. We do not say that a contract obligation is impaired only when a substantial loss will result, but we do think the extent of the loss is a significant consideration in determining whether or not the exchange of one set of rights for another set of rights does actually violate the constitutional prohibitions against impairing contract obligations.

Both the general and specific problem now before us were considered in Anderson v. Cleveland-Cliffs Iron Co., Ohio App., 1948, 87 N.E.2d 384. That case involved a plan of consolidation similar to the one under consideration and provided for the elimination of preferential dividend arrearages. In upholding the plan, the Ohio Court stated, 87 N.E.2d at page 390: "By accepting their stock certificates the shareholders of both companies agreed that their corporations might consolidate and determine 'the manner and basis of converting the shares of each of the constituent corporations into shares of the consolidated corporation.' This was done, as the preferred shareholders by their contracts agreed it might be done, upon the approval of two-thirds of the voting power of each corporation, with the right reserved to dissenting shareholders to receive the fair cash value of their shares."

Further the Court said, 87 N.E.2d at page 391: *"There is little doubt that one of the important objectives of the consolidation was the elimination of existing preferred*

*dividend arrearages.* This matter was the subject of concern and study by the management for many years. While there was no express authorization in Section 67 or any other section of the Corporation Code of 1927 for the elimination of preferred dividend arrearages, *that result is the necessary effect of a consolidation.* A consolidated corporation comes into being as a result of and at the time of the Consolidation Agreement. By operation of law all of the property of the constituent corporations is transferred to the new corporation and the debts and liabilities of the constituent companies are assumed by the consolidated company. The rights and interests of consenting shareholders of constituent corporations, in the consolidated corporation, are fixed by the Agreement of Consolidation which may provide for the issuance of shares in the consolidated company or the distribution of cash, notes, bonds or property in lieu thereof. If there are existing dividend arrearages on the preferred stock of one of the constituent companies, the consolidation agreement must give effect to the value of the preferred shareholders rights to such accumulated dividends in determining a fair basis of conversion of shares or distribution of property in lieu of shares in the consolidated corporation. Assuming the plan to be fair, a preferred shareholder's interest in a constituent company, including his right to cumulative dividend arrearages, is fully protected by its conversion into shares or other considerations of the consolidated corporation. In the absence of an abuse of discretion by the directors, in failing to pay dividend arrearages, a shareholder in a constituent corporation has no immediate assertable right to collect the full amount of such arrearages. The consolidation of his corporation with another does not confer such right. By the act of consolidation a constituent corporation surrenders its corporate identity. *A preferred shareholder no longer can expect payment of dividend arrearages from his corporation and inasmuch as a consolidated corporation can have no existing dividend arrearages at the time of its creation the compromise and adjustment thereof is a necessary incident of consolidation."* (Our italics.)

A much discussed case is Federal United Corporation v. Havender, 1940, 24 Del.Ch. 318, 11 A.2d 331. It was there held that a merger plan under a statute similar to ours, which extinguished dividend arrearages, was valid. The Court stated at page 338, of 11 A.2d: " * * * The catholic quality of the language of the merger provisions of the law negatives a narrow or technical construction if the purpose for which they were enacted is to be accomplished. MacFarlane et al. v. North American Cement Corporation, 16 Del.Ch. 172, 157 A. 396. Moreover, it is recognized that there may be shareholders who will be dissatisfied with the effect of the terms of the merger proposal upon the rights attached to their shares. While their right to dissent is admitted, the public policy of the state declared by the statute, somewhat analogous to the right of eminent domain, does not permit a dissenting shareholder, as against an affirmative vote of two thirds, to veto a merger agreement if its terms are fair and equitable in the circumstances of the case. Within the time and in the manner provided by the statute, the dissatisfied stockholder, if he so desires, may demand and receive the money value of his shares as that value has been agreed upon or has been determined by an impartial appraisement. *Consequently, in a case where a merger of corporations is permitted by the law and is accomplished in accordance with the law, the holder of cumulative preference stock as to which dividends have accumulated may not insist that his right to the dividends is a fixed contractual right in the nature of a debt, in that sense vested and, therefore, secure against attack.* Looking to the law which is a part of the corporate charter, and, therefore, a part of the shareholder's contract, he has not been deceived nor lulled into the belief that the right to such dividends is firm and stable. On the contrary, his contract has informed him that the right is defeasible; and with that knowledge the stock was acquired. In such situation the shareholder is not confronted, as was the complainant in the Keller case,

with a proposed alteration of rights attached to preference stock not within the contemplation of the law as it stood when the corporation was formed and the stock issued (except as an alteration of rights may be said to be imagined under the general reserve power of the state) and with no alternative right to demand and receive the value of his stock in money." (Our italics.)

The Keller case mentioned in the opinion is Keller v. Wilson & Co., Inc., 1936, 21 Del.Ch. 391, 190 A. 115. That case involved a plan of recapitalization and the extinguishment of dividend arrearages under a statute which generally permitted amendments but made no provision for the payment of the value of shares of dissenting stockholders. The Court reached the conclusion that the dividend rights were vested property rights which were protected by the Federal and State Constitutions. If we were to assume that decision sound under the particular facts involved, the subsequent Havender decision, by the same Court, pointed out the distinguishing features when a different statute, providing for consolidation, was involved.

■ From the foregoing discussion we think it can be said that a consolidation necessarily involves a change in the rights of shareholders; that the shareholder is on notice that changes may be effected; that a reasonable alteration of preferred stockholders' rights would include the elimination of dividend arrearages and the other changes made under the present plan, provided they were necessary, proper and fair in view of the corporate condition shown in the particular case; and that, therefore, if our consolidation statute specifically authorized the type of plan here proposed, it would not in the legal sense impair the obligations of appellants' contracts.

II. We also believe the foregoing discussed authorities, and particularly the Anderson and Havender cases from which we have quoted at length, answer the second question as to whether or not our consolidation statute may be construed as authorizing the alteration in stock rights to the extent proposed.

KRS 271.475 provides that the consolidation agreement: " * * * shall state the manner and basis of converting or exchanging the shares of each of the consolidating corporations into or for the shares or other securities of the new corporation."

■ A readjustment of stock rights is plainly contemplated. Old rights are exchanged for new ones. The elimination of dividend arrearages and the other changes proposed may be said to be, in the proper case, necessary incidents of consolidation. Our statute recognizes this because it provides that a dissatisfied stockholder may demand the fair market value of his shares. KRS 271.490(1). We do not think the legislature provided for the payment of the value of his shares to a dissenting stockholder to satisfy some temperamental dissatisfaction with the consolidation. Surely the lawmakers must have had in mind the fact that the new corporate organization would to some extent alter the pre-existing rights of the shareholders. See in addition to the Anderson and Havender cases, Hubbard v. Jones & Laughlin Steel Corp., D.C., 42 F.Supp. 432; Anderson v. International Minerals & Chemical Corp., 295 N.Y. 343, 67 N.E.2d 573; and MacFarlane v. North American Cement Corporation, 1928, 16 Del.Ch. 172, 157 A. 396. Therefore, we conclude the plan proposed conforms with the provisions of the consolidation statute.

■ III. In cases such as we have before us, in spite of what the statute authorizes or could authorize, we are always met with the very important question concerning the fairness of the plan proposed, and this brings us to the third point raised by appellants. They state several reasons why the proposed plan is not fair and equitable. Their underlying argument is that the common stock would substantially benefit at the expense of the preferred stock rights. It is pointed out that the elimination of preferred dividend arrearages, the reduction of the annual preferred dividend, and the conversion of non-callable preferred stock to callable stock will put the common stockholders in a much better position than they now occupy. This is perhaps true, but it is also true that the pre-

ferred stockholders will immediately receive a substantial payment of $2.50 per share, and the plan puts Railway on a sound operating basis which should assure the immediate resumption of preferred dividend payments not otherwise possible.

It is obvious the corporation and all of its stockholders will benefit. It does not strike us the plan is unfair because the common stockholders will receive benefits along with appellants. We think appellants' suggestion that out of the surplus created Railway will proceed to pay it all out in dividends, principally to the common stockholders, or will borrow money for that purpose, is an unwarranted assumption, and cannot properly be considered in this proceeding.

It is significant that a number of prominent bankers, public officials, and businessmen have testified that the plan was fair, particularly to the preferred stockholders; and in the considered opinion of one of these bankers, the preferred shareholders will receive the equitable equivalent of what they previously had. In addition, we must attach some weight to the judgment of the Board of Directors in the determination of what will promote the best interests of the corporation they serve. See Barrett v. Denver Tramway Corp., 3 Cir., 146 F.2d 701, and MacFarlane v. North American Cement Corporation, 1928, 16 Del.Ch. 172, 157 A. 396. Still further we think it significant that the United States Trust Company and others, owning over 3,500 shares of preferred stock but none of the common stock, have filed a brief in this action as amici curiae urging approval of the plan.

We have considered the equities of the case, even though KRS 271.415(4) (b) limits the right of a dissenting stockholder to object to the plan of consolidation (where not violative of applicable statutes) to "actual fraud of his rights." There simply is no evidence of any type of fraud in this case, much less actual fraud. We conclude that the plan is fair and equitable.

IV. Appellants set forth a number of other grounds of illegality. Among them is the contention that the right to preferential cumulative dividends is a present liability of Railway, and KRS 271.485(5) provides that the *liabilities* of constituent corporations shall not be affected by consolidation. Appellants are mistaken when they classify this right as fixing a debt or liability of the corporation. It is a potentiality, incident to their stock ownership, but it could not become a fixed obligation until declared. We have heretofore discussed the nature of this right, and the decided cases in Kentucky and other jurisdictions settle the point. It is apparent that consolidation will result in the effective conversion of all of the shares of stock and will extinguish the rights formerly attached thereto. See in addition to the McNulty, Anderson and Havender cases, Porges v. Vadsco Sales Corp., 1943, 27 Del.Ch. 127, 32 A.2d 148; Langfelder v. Universal Laboratories, 3 Cir., 163 F.2d 804; and Anderson v. International Minerals & Chemicals Corporation, 295 N.Y. 343, 67 N.E.2d 573.

Several other points are raised, but this opinion is already too long, and we cannot discuss them in detail. Suffice it to say that they have each been carefully considered, and in our opinion do not justify a reversal of the judgment.

The judgment is affirmed.