**ANDERSON, et al., Plaintiffs, v. CLEVELAND-CLIFFS IRON Co., et al., Defendants.**

Common Pleas Court, Cuyahoga County.

No. 579838.   Decided June 9, 1948.

Wilbert J. O'Neill, Silas J. Blair, Earl J. Krock, Cleveland, Robert J. Newton—of Counsel for plaintiffs.

Jones, Day, Cockley & Reavis, Cleveland, William M. Cockley, Frank C. Heath and John G. Sarber, Cleveland,—of Counsel for defendants.

**OPINION**

By McNAMEE, J:

Plaintiffs are the owners of 4327 shares of the preferred stock of the old Cleveland-Cliffs Iron Company, defendant herein. The intervening petitioners seeking the same relief as plaintiffs, and upon identical grounds, are the owners of 1270 shares of the preferred stock of defendant corporation. The individual defendants are directors of said corporation. On April 24, 1947, the directors of The Cleveland-Cliffs Iron Company approved an "Agreement of Consolidation" by the terms of which it was proposed to consolidate the assets and liabilities of the defendant corporation with the assets and liabilities of the Cliffs corporation in a new corporation also to be known as The Cleveland-Cliffs Iron Company.

The "Agreement of Consolidation" was submitted to and voted upon by the stockholders at a special meeting called for that purpose, on June 16, 1947. More than two-thirds of the voting power of the corporation approved the Agreement. The proposal also was approved by more than two-thirds of the voting power of the Cliffs Corporation. On June 9, 1947, the Agreement of Consolidation was declared effective by the respective Boards of Directors of the constitutent corporations and filed in the office of the Secretary of State.

In their petition filed on July 7, 1947, plaintiffs seek an order restraining defendants from consummating the consolidation agreement and other equitable relief, but no application for a temporary restraining order was made prior to the filing of the Agreement of Consolidation with the Secretary of State.

Plaintiffs attack the Consolidation Agreement on two principal grounds:

1. That it is illegal as constituting a perversion of the purposes of the consolidation statute (§8623-67 GC).

2. That the Consolidation Agreement was unfairly presented to the stockholders by the Board of Directors and officers of the corporation. It is claimed also that in the event the Court finds the Consolidation Agreement to be valid plaintiffs are entitled to receive the liquidation value of their stock including the dividend arrearages thereon in accordance with the provisions of their preferred share contracts.

In their petition the plaintiffs allege that the Cliffs Corporation as sole owner of the common stock of Cleveland-Cliffs Iron Company, and the officers and directors and other owners of preferred shares were debarred from voting said shares in favor of the Consolidation Agreement—but no argument, either oral or in the briefs, has been made in support of these claims. Therefore they are considered as having been waived.

Plaintiffs' claims and the facts, essential to an understanding of the decision reached on each point will be considered in the order stated above.

1. For many years The Cleveland-Cliffs Iron Company has been one of the leading producers of iron ore in this country. Prior to 1929 its capitalization consisted entirely of common stock. In the latter year the corporation was recapitalized by the issuance of shares of $5.00 cumulative preferred stock in addition to the common stock. In June 1947, the company had outstanding 487,238 shares of preferred and 408,296 shares of common stock. All the common shares are owned by Cliffs Corporation. The Cliffs Corporation was organized in 1929 in conjunction with the recapitalization of Cleveland-Cliffs Iron Company and as a part of a plan to create a new large steel corporation in the Middle West. This plan failed of realization but Cliffs Corporation continued to function as a holding company. At the time of consolidation and in addition to its ownership of all the common shares of Cleveland-Cliffs Iron Company, Cliffs Corporation possessed additional assets consisting of cash and common stock of various steel companies all of the approximate value of $25,000,000.00. In June, 1947, Cliffs Corporation had 805,000 shares of common stock outstanding. The management of Cleveland-Cliffs Iron owned and controlled about 35% of the preferred stock of that company and 33½% of the common stock of the Cliffs Corporation.

At the time of consolidation there were arrearages on the preferred stock of Cleveland-Cliffs Iron amounting to $26.16

per share or total arrearages in the sum of $12,746,148.08. There was also a deficit in the preferred stock sinking fund of $14,500,000.00. The company had a funded debt of approximately $7,000,000.00, but its working capital was in excess of $18,000,000.00 and it had an earned surplus of more than $17,000,000.00. Because of financial difficulties not necessary to be recounted, the company defaulted in its payment of dividends on the preferred stock in the year 1931 but in 1940 it resumed payment of the current preferred dividends and since the latter year it has made payments of $3.00 per share on the existing arrearages. No dividends have been paid on the common stock since 1930. Cleveland Cliffs Iron and Cliffs Corporation are managed by the same officers, but excepting E. B. Greene, who is a director in both companies, there is no common membership on the respective boards of directors.

Beginning about 1937, the executive and fiscal officers of the corporation sought to devise acceptable plans of recapitalization and merger with a view of combining the resources of the two corporations and the elimination of the preferred dividend arrearages of Cleveland-Cliffs Iron. About 40 plans of recapitalization and 20 plans of merger were formulated. From time to time many of these plans were discussed informally with large stock-holding interests of both companies but prior to 1947 none of these plans was considered formally or officially by the directors or stockholders of either company. In the latter part of 1946, for reasons unnecessary to be stated, the management of Cliffs Corporation, proposed plans for the dissolution of that company and the distribution of its assets among its stockholders. This proposal included, of course, the distribution of 408,296 shares of the common stock of Cleveland-Cliffs Iron Company. Following a suit to enjoin the dissolution proceedings the plan was abandoned. Immediately thereafter the directors of both corporations agreed upon the plan of consolidation which, as above noted, was consummated on July 9, 1947. Under the adopted plan a new corporation, known also as Cleveland-Cliffs Iron Company, was formed with an authorized capitalization of 500,000 shares of $4.50 cumulative preferred stock of $100.00 par value and 3,000,000 shares of common stock of the par value of $1.00. Subject to adjustments made necessary by the claims of dissenting shareholders the Agreement contemplates the issuance of 487,238 shares of $4.50 cumulative preferred and 2,300,140 shares of common. Preferred shareholders of the old Cleveland-Cliffs Iron Company will receive one share of $4.50 cumulative preferred and one share of common stock

in the new company for each share of $5.00 cumulative preferred stock held by them in the old company. Shareholders of Cliffs Corporation will receive 2¼ shares of common in the new company for each share of common stock of Cliffs Corporation. ·

Sec. 8623-67 GC, effective 1927, provided, in part, as follows:

"Any two or more corporations organized under the laws of this state may consolidate into a single corporation as follows:

(a) The board of directors of each corporation shall approve an agreement which shall set forth the terms and conditions of consolidation, the mode of carrying the same into effect and such other facts as are required to be set out in articles as hereinbefore provided, as well as the manner and basis of converting the shares of each of the constituent corporations into shares of the consolidated corporation (whether into the same or a different number of shares) with such other details and provisions as are deemed necessary or desirable."

Section 67 also provided for a special meeting of the shareholders of the consolidating companies for the purpose of voting upon the question of adoption or rejection of the Consolidation Agreement, and

"if approved by the affirmative vote of the holders of shares of each corporation entitled to exercise two-thirds of the voting power or such other proportion, not less than a majority, or vote by classes, as the articles may require, said agreement shall be adopted, and shall be the agreement of such corporations."

Section 67 also provided:

"Dissenting shareholders shall be entitled to relief in the manner and under the conditions hereinafter provided."

Under the 1927 Code corporations were permitted to amend their articles of incorporation in many respects, but it was not until 1939 that the legislature made express and specific provision for the elimination of preferred dividend arrearages by amendment to the articles of incorporation.

In **Wheatley, Trustee, et al v. The A. I. Root Co. et al 147 Oh St 127,** the Supreme Court declared:

"The provisions of §8623-14 (3) (i) GC, authorizing a corporation to 'change any or all of the express terms and provisions or designations of issued or unissued shares of any

class or series; which change, if desired, may include the discharge, adjustment or elimination of rights to accrued undeclared cumulative dividends on any such class,' may not be applied retroactively to permit an alteration of the terms of a contract made by a private corporation with its shareholders prior to the date of the enactment of such statute." (syl. par. 3).

Plaintiffs contend that no economic need or business purpose warranted the Consolidation Agreement and that the same was an illegal attempt to amend the articles of incorporation by resorting to the procedure authorized by Section 67 instead of complying with the requirements of Sections 14 and 15 of the Corporation Code which govern amendments to corporate charters. It is plaintiffs' view that the Consolidation Agreement was in "legal essence" an amendment of the Articles of the Cleveland-Cliffs Iron Company with a contemporaneous purchase of all of the assets of Cliffs Corporation. Otherwise stated, plaintiffs contend that the Consolidation Agreement was a perversion of the purposes of Section 67 and designed to accomplish the elimination of the preferred dividend arrearages which result could not have been achieved by amendment to the articles of incorporation under the rule laid down in Wheatley v. A. I. Root (supra). Plaintiffs cite and rely upon many cases from other jurisdictions wherein courts refused to permit a controlling majority, by formal or colorable compliance with a statute, to accomplish unauthorized or illegal corporate purposes.

Forrester v. B & M Mining Co. 21 Mont. 544; Paine v. Saulsbury, 200 Mich. 58, 166 N. W. 1036; Farish v. Cienginta Copper Co. 12 Ariz. 235, 100 Pac. 781; Theis v. Spokane Falls Gas Light Co. et al. 34 Wash. 23, 74 Pac. 1004; Ervin v. Oregon Ry and Navigation Co. 27 Fed. 625; Doe Run Lead Co. v. Maynard, 283 Mo. 646, 223 S. W. 600; Wm J. Riker & Son v. United Truck Co. 79 N. J. Eq. 580, 82 Atl. 930.

Although the above cited cases involve facts entirely dissimilar to those here under review they illustrate the principle that recourse may not be had to existing statutory procedures to aid in the accomplishment of illegal or unauthorized corporate purposes. In these cases there was formal compliance with dissolution statutes—sale of assets statutes—and consolidation statutes for the real and sole purposes of accomplishing unauthorized results inimical to the interests of the dissenting minority shareholders. There can be no quarrel with a principle that forbids perversion of statutory authority.

But this principle can have application here only if it be determined that defendants had recourse to Section 67 of the Corporation Code for the sole purpose of accomplishing a result not authorized or permitted by the statutes in effect.

Small v. Sullivan, 245 N. Y. 272, 157 N. E. 261, involved a fraud upon the creditors of one of the consolidating companies and lends no support to plaintiffs' contention.

Plaintiffs insist that the Consolidation Agreement may be upheld only upon the authority of the much criticized case of Havender v. Federal United Corp. 11 Atl. (2nd) 331 (Sup. Ct of Del.). The Court does not concur in this view. In view of the emphasis placed upon this argument it may not be inappropriate to examine the Havender case. That case is subject to criticism because the Supreme Court's decision represents a denial of principles declared by the same court in the cases of Keller v. Wilson, 190 Atl. 115, and Consolidated Film Industry v. Johnson, 197 Atl. 489. In the last two mentioned cases the Supreme Court of Delaware held that accrued dividend arrearages on preferred shares could not be eliminated by amendments to the corporate charters under Section 26 of the Delaware Corporation Act. In the Havender case the Supreme Court held, in effect, that preferred dividend arrearages might be eliminated by recourse to Section 59 of the Delaware Corporation Code (the merger section), even though it appeared that the real and only purpose of the merger was a reclassification of the corporations shares. The transaction in the Havender case was a mere legal device designed to accomplish indirectly by formal compliance with the merger statute a result previously interdicted by the court in direct proceedings under the amendment to the articles statute. In this respect the Havender decision deviates from equitable principles hitherto considered as irrevocable. In the Keller case (supra) it was held that the right to cumulative dividends already accrued through the passage of time is a vested right in the nature of a debt and not subject to destruction by amendment to the corporate charter. In the Johnson case (supra) the same issue was presented in a slightly different factual pattern. There, the corporation was created after amendments to the Delaware Corporation Code in 1927, authorizing amendments to corporate charters by which preferences, or relative, participating, optional or other special rights of the shares might be changed. In the Johnson case the Supreme Court of Delaware held that in the absence of clear and precise language admitting of no reasonable doubt, that a retrospective operation was intended,

an amendment to the articles of incorporation was effective only from the time of its adoption and was not efficacious to defeat the shareholders rights to cumulative dividends which had theretofore accrued. The rationale of the Keller and Johnson cases seems to be that the right to cumulative dividends exists by virtue of a contract between the shareholder and the corporation and between the shareholders themselves; that the passage of time and the nonpayment of cumulative dividends fixes the measure of the contractual obligation which cannot be impaired either by legislation subsequently enacted or corporate action subsequently taken, unless in the latter event there is a clear and express legislative direction that the corporate action shall have retroactive effect. In the Havender case the Federal United Corporation, which was in arrears on the payments of dividends on its $6.00 preferred stock to the extent of $29.00 per share merged with its wholly owned inactive subsidiary, the parent company being the surviving corporation. Under the merger agreement each share of $6.00 preferred stock of the parent corporation was converted into one share of $3.00 preferred and six shares of Class A common stock of the merged company. When a stockholders suit to enjoin the merger was heard in the Chancery Court of Delaware, Chancellor Wolcott perceived the true character of the plan, stating:

"It is obvious that the defendant used its wholly owned subsidiary as a mere instrumentality under its control to go with it through the motions of a merger for the purpose of giving the color of legality to what under the cases hereinbefore cited, it was not permitted to do by way of an amendment to its certificate of corporation." 2 Atl. (2nd) 147.

Refusing to countenance the obvious subterfuge that was attempted, and styling the merger a "mere technical thing" the Chancellor stated further:

"There was thus no occasion for any reorganization or reclassification of its own capital structure to the end that the equities of its stockholders might be adjusted to a new asset and liability situation and brought in fair relation with the rights of a new group. So far, as the combined assets of these two merging corporations are concerned, the defendant's stockholders stood in relation thereto exactly in the same identical position of ultimate rights as owners after the merger as they did before. Before the merger those assets were theirs in the eyes of equity, though not in point of legal title, because their

corporation, the defendant, owned all the stock of the subsidiary which had the assets. After the merger, the only change was that the one intermediary between the defendant's stockholders and the subsidiary's assets was eliminated as the legal owner." (Ibid 144)

But in answer to the contention that in no case whatever can holders of preferred stock in one of the merging companies on which dividends had accumulated be compelled to make a choice between accepting the new shares or the appraised value of the old, the Chancellor said:

"This is a broad contention. Its acceptance or rejection in the broad terms in which it is stated should be only after a full and deliberate examination of the considerations which suggest themselves as open to inquiry." (Ibid 145)

As hereinbefore indicated the Supreme Court reversed Chancellor Wolcott's decision, treating the pro-forma merger as genuine and holding that Section 59 of the Code was a part of the shareholders contract, conferring upon the corporation the power to merge and convert its shares into the shares of the surviving company. The Supreme Court also gave weight to the fact that under Section 59 dissenting shareholders were entitled to the appraised value of their shares, whereas under Section 26 no such alternative was available. The Supreme Court's decision in the Havender case has been followed by courts of other jurisdictions.

Porges v. Vadsco Sales Corp. 32 Atl. (2nd) 148, C. C. Del. (1943); Hubbard et al v. Jones and Laughlin, 42 Fed. Sup. 432; Zobel v. American Locomotive Company, 44 N. Y. S. (2nd) 33, 1943.

In the foregoing cases judicial approval was given to the elimination of preferred dividend arrearages in mergers of parent and subsidiary corporations. The Havender decision was also followed in Hottenstein v. York Ice Machinery Corp. 137 Fed. (2nd) 944 (C. C. A. 3—1943) and Langfelder et al v. Universal Laboratories, Inc. 163 Fed. (2nd) 804 (3 C. C. A.) but in both of the last cited cases the Courts of the United States clearly evidenced their disapproval of the decision in the Havender case but considered themselves bound to follow it under the rule of Tomkins v. Erie Railroad, 304 U. S. 64.

In the Hottenstein case (supra) the Court said:

"For shorn of rationalization the decision constitutes a

repudiation of the principles enunciated in the Keller case and in the Consolidated Film Industry v. Johnson."

And again, in more picturesque language, the same Court observed:

"While the approach of the Supreme Court in the Havender case was through Section 59, which as we stated had remained substantially unchanged in form since the adoption of the General Corporation Law in 1899—21 Delaware Laws C. 273, and the approach in the Keller case was through Section 26, we must conclude that Havender broke Keller's back."

This Court agrees with plaintiffs that upon the peculiar facts of the Havender case and the law of Delaware as declared in the Keller and Johnson cases, Chancellor Wolcott's reasoning is to be preferred to that of the Supreme Court of Delaware. While the Supreme Court's opinion in the Havender case may be fairly criticized as reflecting the extreme of judicial deference to mere form and appearance, it is nevertheless true that the reasoning of that case when applied to the facts of a true merger or consolidation is unassailable. The instant case differs materially in its facts from the Havender case. Here, there is no merger of a parent company with its wholly owned inactive subsidiary. In contrast with the merger in the Havender case which effected no change in asset position, this consolidation resulted in producing an increase in assets of approximately $25,000,000.00. Nor is this a case where the corporation had recourse to the consolidation statute for the sole purpose of accomplishing an unauthorized result, as was true in the perversion of statute cases cited ante. This case presents no question involving the destruction of vested rights or the retrospective application of statutes or corporate action. Nor does the consolidation impair contractual obligations. There was express legislative authority for the action taken. It is well settled that a shareholder's contract includes the pertinent and appropriate statutory provisions in effect at the time the corporation is created. Section 67 was a part of the preferred shareholders contracts. By accepting their stock certificates the shareholders of both companies agreed that their corporations might consolidate and determine "the manner and basis of converting the shares of each of the constituent corporations into shares of the consolidated corporation." This was done, as the preferred shareholders by their contracts agreed it might be done, upon the approval of two-thirds of the voting power of each corpora-

tion, with the right reserved to dissenting shareholders to receive the fair cash value of their shares.

The refusal of the Supreme Court in Wheatley v. Root (supra) to accept the argument that complainants there were entitled to the fair cash value of their shares rather than the injunctive relief prayed for is not in point. The essentially distinctive aspect of the Wheatley case is the illegality of the attempt to amend the articles of incorporation by the retroactive application of legislation enacted twenty-three years after the corporation was created. In that case the effective statutes embodied in the shareholders contracts did not authorize the elimination of preferred dividend arrearages, whereas in the instant case the preferred shareholders contracts expressly authorized consolidation and the conversion of shares of the constituent companies. At page 144 of its opinion in the Wheatley case, the Supreme Court said:

"'Under the holding of this court in paragraph three of the syllabus in the Lamprecht case, the plaintiffs herein are not relegated to the remedy provided by §8623-72 GC, since the amendment of the articles of incorporation in the respect indicated is illegal and the statutory remedy is therefore not exclusive."

Manifestly, illegal corporate action is not effective for any purpose. A shareholder does not agree to be bound by the illegal action of his corporation and cannot be required to elect between acquiescence therein or the acceptance of the fair cash value of his shares.

It is true, as plaintiffs claim, that the defendant corporation had adequate working capital and that there was no real need for the addition of the liquid assets of Cliffs Corporation. Plaintiffs position in this regard is confirmed by the statements made by officers of Cliffs at the time dissolution of that company was proposed. But the right of corporations to consolidate is not conditioned upon business exigencies or economic necessity. Courts possess no veto power over the purely business judgments of corporate officers or stockholders. Whether the addition of over twenty million dollars of cash and steel stocks was necessary or desirable is a matter peculiarly within the province of the affected interests to determine. In their attack on the consolidation agreement plaintiffs emphasize the historical purpose of con-

.solidation statutes which limited their permissive scope to the combination of operating and unaffiliated corporations. Whatever may have been the legislative purpose as expressed in former statutes, it is clear that the unqualified language of Section 67, which provides that "any two or more corporations organized under the laws of this state may consolidate" forbids an interpretation that would confine the authority conferred within the circumscribed purposes of the special consolidation statutes which have been repealed.

It is urged that the Consolidation Agreement was essentially a recapitalization of Cleveland-Cliffs Iron and a purchase by that company of the assets of Cliffs. If the imperfections in the suggested analogy be disregarded it is apparent that every merger or consolidation may be similarly characterized. The amalgamation of corporate interests that results from merger or consolidation may be otherwise accomplished by reclassification of capital structure and transfer of assets, but corporations desiring to combine their resources are not required to adopt the procedures of "recapitalization" and "sale" merely because one of the companies is in arrears in the payment of cumulative preferred dividends.

There is little doubt that one of the important objectives of the consolidation was the elimination of existing preferred dividend arrearages. This matter was the subject of concern and study by the management for many years. While there was no express authorization in Section 67 or any other section of the Corporation Code of 1927 for the elimination of preferred dividend arrearages, that result is the necessary effect of a consolidation. A consolidated corporation comes into being as a result of and at the time of the Consolidation Agreement. By operation of law all of the property of the constituent corporations is transferred to the new corporation and the debts and liabilities of the constituent companies are assumed by the consolidated company. The rights and interests of consenting shareholders of constituent corporations, in the consolidated corporation, are fixed by the Agreement of Consolidation which may provide for the issuance of shares in the consolidated company or the distribution of cash, notes, bonds or property in lieu thereof. If there are existing dividend arrearages on the preferred stock of one of the constituent companies, the consolidation agreement must give effect to the value of the preferred shareholders rights to such accumulated dividends in determining a fair basis of conversion of shares or distribution of property in lieu of shares in the consolidated corporation. Assuming the plan to be fair,

a preferred shareholder's interest in a constituent company, including his right to cumulative dividends arrearages, is fully protected by its conversion into shares or other considerations of the consolidated corporation. In the absence of an abuse of discretion by the directors, in failing to pay dividend arrearages, a shareholder in a constituent corporation has no immediate assertable right to collect the full amount of such arrearages. The consolidation of his corporation with another does not confer such right. By the act of consolidation a constituent corporation surrenders its corporate identity. A preferred shareholder no longer can expect payment of dividend arrearages from his corporation and inasmuch as a consolidated corporation can have no existing dividend arrearages at the time of its creation the compromise and adjustment thereof is a necessary incident of consolidation.

However, it is suggested that a constituent corporation with a surplus adequate for the payment of existing dividend arrearages, may not, by consolidating with another, eliminate the preferred shareholders rights to the payment of such arrearages. Reference is made to expressions in the opinions of the courts of New Jersey as reflecting the policy of that state not to permit the elimination of preferred dividend arrearages by consolidation, where the effected constituent corporation has a surplus in excess of the amount of the accumulated dividends. But an examination of the cited cases does not confirm the view that this is the established law of New Jersey and there is no sound reason for applying one rule where there is a surplus and another where no surplus exists. In either event the validity of the plan of consolidation is to be determined by reference to the terms of the shareholders contracts and the requirement that the plan be free from fraud, actual or constructive, and fair to all of the shareholders

In considering the issue raised it is to be remembered that the elimination of preferred dividend arrearages was not the only purpose of the consolidation. Wisely, or not, the Consolidation Agreement was intended to and did result in the formation of a corporation of impressively greater financial strength. The view that the consolidation conferred substantial benefits upon the common shareholders is undoubtedly correct. But it has not been demonstrated that this was accomplished by unfair treatment of the preferred shareholders.

Apparently conceding the right of Cliffs Corporation as

sole owner thereof, to vote the common stock of Cleveland Cliffs Iron Company, plaintiffs nevertheless contend that ∎ the consolidation is invalid because, in effect, it was approved by only one family of corporate shareholders. This view rests upon the assumption that Cliffs Corporation as the owner of all of the common stock of Cleveland Cliffs Iron and the common stockholders of Cliffs who were the beneficial owners thereof, stand in identical relationships to the preferred stockholders of Cleveland Cliffs Iron. This is not true. The preferred shareholders of Cleveland Cliffs Iron Company have no interest in Cliffs Corporation which owned other assets in addition to the common shares of the Cleveland Cliffs Iron Company. Neither corporation was the parent or a wholly owned subsidiary of the other. In the absence of a common parentage the preferred shareholders of Cleveland Cliffs Iron and the common shareholders of Cliffs Corporation can not be considered as members of the same corporate family of shareholders.

Also it is suggested that approval of the Consolidation Agreement by this Court will establish a precedent that will enable common shareholders of corporations to eliminate preferred dividend arrearages by organizing a separate corporation to hold their common stock . As plaintiffs put it:

"Then there is no reason why the common stockholders of any corporation in Ohio could not form a holding company and transfer to it their common stock and perhaps some cash or other assets and then proceed to consolidate with the company in which the common stock is owned, and thereby wipe out all accumulated dividends on the preferred stock of that company, without amendment articles or a vote of the preferred shareholders."

This argument presupposes that Ohio courts will permit the recapitalization of a corporation detrimental to its preferred shareholders to be accomplished by subterfuge. Also it fails to recognize that the common stockholders of Cleveland-Cliffs Iron were not the only persons who transferred assets to Cliffs Corporation when that company was organized in 1929. A substantial portion of Cliffs assets are represented by securities transferred to that corporation by others at a cost of approximately $40,000,000.00.

For the reasons hereinabove indicated this Court is of the opinion and therefore holds that the Consolidation Agreement was not a perversion of the purposes of §8623-67 GC and that

said Agreement was authorized by and executed in conformity with the preferred shareholders contracts.

2. It would profit little and extend this opinion unduly to undertake an examination of the many arguments of plaintiffs in support of their contention that the plan of consolidation was unfairly presented to the shareholders. The chief complaint in this regard is that the financial statements of The Cleveland-Cliffs Iron Company did not reflect the actual value of the corporation's assets. Iron ore lands, timber lands, coal lands, and many other items were stated on the basis of cost or on the basis of values established for income tax purposes in 1913, less depletion, depreciation, etc.

At the trial, defendants conceded for the purposes of this suit, that the liquidating value of the net assets of Cleveland-Cliffs Iron Company was sufficient to pay the voluntary liquidation value of the preferred shares, including dividend arrearages, and provide a balance for distribution to the common share holders. Plaintiffs insist that information disclosing the present actual value of the Corporation's assets ought to have been submitted by the directors to the stockholders in financial statements accompanying the proposal to consolidate. In view of the Securities and Exchange Commission's requirements, it is to be doubted that the management of a corporation can safely make representations of values other than as stated on its books, except by an independent appraisal of its assets. While the consolidation statute contains no requirement for an appraisal of assets of constituent corporations, conceivably, situations may arise where an independent appraisal of assets of consolidating companies might be necessary. But there is no evidence in this case indicating that a single preferred shareholder was misled or deceived by the statements submitted in connection with the proposal to consolidate. Plaintiffs were not misled. Before the vote on consolidation was taken, their chief counsel in this case, wrote a letter to all preferred shareholders in which the following statement appears:

"In the proxy statement of April 24th, at the bottom of page 17, the company said in effect that after the involuntary liquidating value of $100.00 per preferred share and the $26.16 per share accumulated dividends, there was a book value deficit of $24.79 per common share. The company does not say that this is a real deficit but it doesn't make clear that it is not. I think it is not, that the company's ore, timber, railroad and steamship properties are grossly undervalued on its books and that the talk about $24.79 per common share

book value deficit is misleading, just as is the talk about an increase of $45.00 per share in preferred stock book value through the consolidation."

Nor is there any claim that dissenting preferred shareholders of more than 23,000 shares, who are not parties to this suit were deceived. Plaintiffs assert that they cannot be bound by the vote of the majority obtained upon misleading and deceptive representations in respect of the corporation's financial worth. But in the absence of evidence to the contrary this Court may not assume that preferred shareholders who approved the plan were misled. Under the circumstances there is no warrant for finding that an indepedent appraisal of assets was necessary or that the proposal was unfairly presented to the shareholders. The manner of presentation of material facts to the shareholders is well summarized in defendants' brief, as follows:

"The issue was presented to the shareholders by a 7-page letter from the president of the company explaining the proposed consolidation and by exhibits to such proxy statement consisting of the agreement of consolidation, a pro forma consolidated balance sheet of the proposed new corporation, a quotation of §8623-72 GC advising a shareholder of his rights as a dissenter and financial statements (both balance sheets and profit and loss statements) of Cleveland-Cliffs and its consolidated subsidiaries, the Cliffs Railroad Company, an unconsolidated subsidiary of Cleveland-Cliffs."

In addition, the earnings records, dividend payments, and market prices of the securities of the constituent companies for several years past was included. The statements and representations set forth in the proxy statements were submitted to and received the approval of the Securities and Exchange Commission and such statements were modified by defendants to include recommendations of the Commission.

Plaintiffs cite cases from other jurisdictions wherein courts considered values of assets of constituent companies to be relevant upon the issue of legality of consolidation or recapitalization plans. But in each of these cases there was involved the question of the fairness of the plan to the dissentient shareholders. In Jones v. Missouri Edison Electric Company, 194 Fed. 64 (C. C. A.) relief was granted because it was shown that the distribution of the stock of the merged company among the stockholders of the merging companies

was grossly unjust. In Cole et al v. National Cash Credit Association, 156 Atlantic, 183 (C. C. Del. 1931) the Court said:

"The crucial point on which their complaint turns is one of value—whether or not they as stockholders in one of the constituents are to receive in exchange of their present holdings, stock which has a value commensurate with the asset contribution which their company is making to the common pool."

The basis of the court's decision to restrain the mandatory plan of recapitalization in Wessel v. Guantanamo Sugar Company, 134 N. J. Eq. 27 (1944) is set forth in paragraph 2 of the syllabus of that case, as follows:

"This court will examine and appraise the recapitalization plan at the suit of the preferred stockholders whose preferential rights are effected thereby, and will restrain its consummation if it finds the plan to be unfair or inequitable."

In Colgate v. United States Leather Company, 73 N. J. Eq. 72, the court, at page 98 of its opinion, said:

"The directors are bound under the consolidation act, to propose an agreement which does not unfairly or inequitably impair the legal or equitable right of any preferred stockholder, and that such stockholder can not be required to exercise any option of surrendering his stock on compensation, until he has had an opportunity of joining in the consolidation under terms and conditions, which, as to him, are legal and equitable."

Thus, in all of the foregoing cases it appears that the courts had under consideration plans that were allegedly or actually unfair to the complaining stockholders.

Although plaintiffs contend that the consolidation proposal was unfairly presented they do not allege nor does the evidence support a claim that the plan of consolidation was unfair to the preferred shareholders. Nor does it appear that the comparative asset values of the constituent corporations were controlling in determining the manner and basis of converting the shares of the constituent corporations into shares of the consolidated corporation. As stated by the treasurer of defendant company: "What we used entirely were earnings, income and market prices. Those were the three factors."

84

Sec. 8623-67 GC provides, in part:

"An agreement of merger or consolidation, when adopted in the manner prescribed in this section, shall in the absence of clear and convincing proof to the contrary be presumed to be fair and equitable in every respect to shareholders."

The statutory presumption of the fairness of the Agreement of Consolidation in this case stands unimpeached.

3. Plaintiffs assert they are entitled to specific performance of their preferred share contracts and ought to receive payment of the voluntary liquidation price of $128.66 per share because the consolidation effected a dissolution of the Iron Company within the meaning of the following provision of the shareholders' contract:

"Upon the dissolution, liquidation or winding up of the Corporation the holders of record of preferred shares shall be entitled to receive out of the assets of the Corporation, if such dissolution, liquidation or winding up be voluntary, an amount equal to $102.50 per share and no more, or if such dissolution, liquidation or winding up be involuntary, an amount equal to $100 per share and no more, in either case with all dividends accrued or in arrears, for each of their preferred shares, before any distribution of the assets shall be made to the holders of common shares."

It is held generally that upon a consolidation becoming effective, the constituent corporations are dissolved in the sense that the separate existence of each constituent terminates.

Shields v. Ohio, 26 Oh St 86; 95 U. S. 319; Diggs v. Fidelity Deposit Co.. 112 Md. 50; 75 Atl.. 517; Jones v. Missouri Edison Electric Co. 144 Fed. 765. Yazoo and Miss. Valley Ry v. Adams, 180 U. S. 1. Morrison v. American Snuff Co. 75 Miss. 330; 30 So. 723. Berry v. Kansas City Fd. S. M. R. R. 52 Kansas, 759; 34 Pac. 805. Coleman Car Co. v. Mo. Pac. R. R. 115 U. S. 587. Railway Co. v. Georgia, 98 U. S. 359; Lauman v. Lebanon Valley R. R. 30 Pa. St. 42.

In none of the foregoing cited cases was there involved the precise question here presented.

In Petry v. Harwood Electric Co. 280 Pa. 142, 124 Atl. 302, preferred shareholders of a constituent corporation sued for specific performance of their preferred share contracts which provided:

"In case of the dissolution of the company, the preferred stock shall be first paid and redeemed at its par value in preference to the common stock out of the property and assets of the company."

The court held that the merger there under review worked a dissolution

"so far as the preferred stockholders are concerned, and they, therefore, are entitled to receive payment according to the terms of their contract and out of the assets of the defendant."

The Petry case was followed in two Federal tax cases which applied the law of Pennsylvania.

See Penn. etc. v. Commissioner Internal Revenue, 75 Fed (2nd) 719; J. M. Smucker Co. v. Keystone Stores Corporation, 12 Fed. Sup. 286.

Except for the last two cited cases the Petry case stands alone.

In Windhurst v. Central Leather Co. 105 N. J. Eq. 621, 149 Atl. 36, affirmed, 153 Atl. 402, the opposite conclusion was reached.

In denying the preferred shareholders request for specific performance in that case the court said:

"It may appear, when superficially examined, as if the results and consequences of a merger are similar in some respects to a dissolution. For example, the name of one or both of the merging companies may be lost. The relation between the various stockholders of one of the corporations may be materially changed, as in the case here. But, on the other hand, the language of those sections which deal with mergers show that these changes are incident to the uniting of the two corporations. The members of the board are not continued as trustees, and the act does not provide that either of the corporations shall be dissolved; it is not provided that the board of either shall proceed to wind up its business and affairs. There is no provision for liquidation and distribution. On the contrary, the act says that the stock shall be delivered up for conversion into shares of the capital stock for the new creation. The very provision for appraisal proves that dissolution does not result. The plain meaning of the act is that the corporations are to be continued as a joint or consolidated whole."

In Adams v. U. S. Distributing Company, 184 Va. 134, 34 S. W. (2) 244, the Supreme Court of Virginia held that, upon a merger of their corporation with several others, preferred shareholders were not entitled to specific performance of their contracts. The court expressly stated its preference for the reasoning of the Windhurst case (supra) to that of the Petry case (supra).

In Otis & Company v. Securities Exchange Commission, 323 U. S. 624 (1945), the Supreme Court of the United States had before it a plan of simplification of capital structure of the United Light and Power Company of Maryland, which provided for the dissolution of the corporation and the distribution of its assets in a manner that failed to recognize the preferential rights of preferred shareholders upon statutory dissolution of the corporation. Preferred shareholders sought to enjoin the plan and demanded the liquidation preferences set forth in their contracts. In denying the relief sought the Supreme Court held that the results accomplished by the proposed liquidation could have been secured by merger or consolidation in which event the effects of statutory liquidation would have been avoided. In this connection the Court said:

"The Commission's order of March 20, 1941, for the liquidation and dissolution of Power was a step in the simplification of the holding company system which simplification was enjoined by Sec. 11 (b) (2) of the Act. Satisfaction of the great-grandfather clause might have been obtained in this or other holding company systems by an order for merger, consolidation or recapitalization between top holding companies or between associate companies in the lower tiers of the corporate hierarchy. Such procedure would avoid the liquidation of Power. Cf. Windhurst v. Central Leather Co., 105 N. J. Eq. 621, 149 A. 36; Porges v Vadsco Sales Corporation, 32 A. 2d 148, 151. The selection by the Commission of one method of system adjustment to accomplish simplification rather than another is an incident which ought not to affect rights. The exercise of legislative power by Congress through Sec. 11 (b) (2) to accomplish simplification as a matter of public policy and the Commission's administration of the Act by dissolution of this particular company results in a type of liquidation which is entirely distinct from the 'liquidation of the corporation, whether voluntary or involuntary' envisaged by the charter provisions of Power for preferences to the senior stock." (p. 631)

While the last cited case is not precisely in point the Supreme Court's apparent approval of the doctrine of the Windhurst case is significant.

See also Langfelder v. Universal Laboratories 163 Fed (2nd) 804 (C. C. A. 3rd 1947); Anderson v. International Minerals and Chemical Co. 67 N. E. (2nd) 573 (N. Y. 1946).

Wholly apart from precedential considerations it is clear that the term "dissolution" as used in the preferred shareholders contracts means statutory dissolution. The phrase "holders of record of preferred shares" and the words "holders of common shares" refer to all of the shareholders. Likewise the designation of amounts to be distributed to the preferred shareholders "**before** any distribution of the assets shall be made to the holders of common shares" (emphasis supplied) contemplates a contingency requiring complete distribution of assets to all of the shareholders. Upon consolidation of a corporation there is no complete distribution of assets to all of the shareholders of the constituent companies. The shares of those approving the agreement are transmuted into shares or other considerations of the new company and dissenting shareholders are entitled to the fair cash value of their shares, which may be collected as a debt.

**Sec. 8623-68 GC** provides, in part:

"When the agreement of consolidation is signed, acknowledged and filed as required in the preceding section the separate existence of the constituent corporations shall cease, and the constituent corporations shall become a single corporation, in accordance with the said agreement, possessing all the rights, privileges, powers, franchises and immunities as well of a public as of a private nature, and being subject to all the liabilities and duties of each of such corporations so consolidated; and all property, real, personal and mixed, and all debts and liabilities due on whatever account, and all other things in action of or belonging to each of such corporations shall be vested in the consolidated corporation, and all property, rights, privileges, powers, franchises, and immunities and all and every other interest shall thereafter be as effectually the property of the consolidated corporation as fully as they were the property of the several and respective constituent corporations."

The foregoing section provides that upon consolidation the separate existence of the constituent corporations shall cease but it also provides that the constituent corporation shall become a single corporation. The constituent corporations

continue to function as components of a consolidated whole. The properties of the constituents retain their character as corporate property. The privileges, immunities, rights, powers and franchises of each constituent continue as corporate attributes. The duties and liabilities of the constituent corporations continue to exist as corporate duties and liabilities. A distribution of corporate assets to all of the individual owners thereof would defeat the purpose of the consolidation statute. The necessity for such distribution arises where there is a complete cessation of the business and economic functions of the corporation concomitant with its legal demise. Until this occurs there is no occasion for a division of the corporate net assets among the shareholders. But when this contingency arises the preferred shareholders are entitled to their preferential rights in such distribution by virtue of the terms of the contract hereinabove set forth. In the opinion of the Court the consolidation did not effect "dissolution" of the defendant corporation within the meaning of that term as used in the liquidating clause of the shareholders contracts.

Both reason and the weight of authority require a denial of the plaintiffs prayer for specific performance.

For the reasons hereinabove indicated and because the Court holds that plaintiffs have an adequate remedy at law by proceedings to determine the fair cash value of their shares as provided in the consolidation statute, the petition of plaintiffs is dismissed at their costs. A Journal Entry, reserving appropriate exceptions to plaintiffs, may be prepared in accordance with the foregoing.